IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ACACIA INSURANCE MANAGERS, LLC | § | |
| and EDGEPOINT SYSTEMS, LLC, | § | |
| | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. _____ |
| | § | |
| MAITH SOLUTIONS, LLC | § | |
| | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

COME NOW Plaintiffs Acacia Insurance Managers, LLC ("Acacia") and Edgepoint Systems, LLC ("Edgepoint," and collectively with Acacia, "Plaintiffs") and file this Original Complaint complaining of Defendant Maith Solutions, LLC, ("Maith"). In support thereof, Plaintiffs respectfully show:

**I.**
## NATURE OF THE ACTION

1.     Plaintiffs institute the instant action in an effort to protect themselves from Maith's meritless copyright infringement threats. As is relevant to the dispute, Acacia is a managing general agent responsible for underwriting insurance risks, placing insurance policies, and managing claims arising under those policies. In fulfilling these obligations, Acacia relies on data management software that allows it to: (1) efficiently underwrite and place policies through its extensive networks of retail agents and  (2) track/memorialize communications with its many policyholders and agents. Historically, Acacia licensed a right to use data management software commonly known as "Insuror Atlas" (the "Atlas Software") from Defendant Maith's predecessor

in interest.  However, Acacia recently entered into an agreement to use data management software offered by Edgepoint (the "Edgepoint Software").

2.       On or about July 1, 2024, Maith delivered a cease-and-desist letter demanding that Acacia refrain from using the Edgepoint Software because it (allegedly) infringes on Maith's "exclusive" rights in the Atlas Software.  While the Atlas and Edgepoint Software share certain technical similarities, the products are distinct in function, design, and application.  Even if the Edgepoint and Atlas Software were identical, however, Maith holds (at best) a ***non-exclusive*** right to the code underlying the Atlas Software.

3.       Accordingly, Plaintiffs seek to protect their business operations from Maith's wrongful demands by obtaining a judicial declaration that: (i) the alleged copyright(s) asserted by Maith as to the code underlying the Atlas Software are invalid and unenforceable and (ii) Plaintiffs' use of—or assertion of rights in—the Edgepoint Software does not infringe any valid copyright allegedly owned by Maith.

## II.
## PARTIES

4.       Acacia is a company organized and existing under the laws of the State of Texas with its principal place of business at 6404 International Parkway, Suite 1250, Plano, Texas 75093.

5.       Edgepoint is a company organized and existing under the laws of the State of Texas with its principal place of business at 6404 International Parkway, Suite 1250, Plano, Texas 75093.

6.       Maith is a company organized and existing under the laws of the State of Texas that maintains its principal place of business at 826 Maplewood Avenue, Dallas, Texas 75205.  Maith may be served with process by serving its registered agent for service of process: Michael J. McClure, 3826 Maplewood Avenue, Dallas, Texas 75205.

### III.
### JURISDICTION AND VENUE

7.      This is an action for declaratory judgment arising under: (i) the United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (the "Copyright Act") and (ii) 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act").  Thus, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338.  Such jurisdiction is exclusive of the "courts of the states" with regard to copyrights.  28 U.S.C. § 1338(a).

8.      By this proceeding, Plaintiffs seek a judicial declaration to resolve a question of actual controversy between the parties.  In particular, Plaintiffs seek to resolve a dispute as to whether their use of—and/or assertion of rights to—the Edgepoint Software infringes on a valid/enforceable copyright held in the Atlas Software.

9.      On or about July 1, 2024, Maith delivered a cease-and-desist letter in which it demanded that Acacia cease using the Edgepoint Software.  However, Plaintiffs contend that they may lawfully use—and/or assert rights to—the Edgepoint Software without infringing any valid copyright (allegedly) owned by Maith.  Thus, Plaintiffs have continued their normal operations, notwithstanding Maith's objections. The disparity between the parties' positions—as well as Maith's threat of potential ligation—creates an actual, substantial, and justiciable controversy between Plaintiffs and Maith on which Plaintiffs require a declaration of rights by this Court.

10.     This Court has personal jurisdiction over Maith because Maith regularly maintains an office and registered agent in the state of Texas and, therefore, is continuously present in the State of Texas.

11.     Venue of this action is proper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claim occurred and will continue to occur in the Eastern District of Texas (Collin County).

**IV.**
**FACTUAL BACKGROUND**

12.     Acacia is a managing general agent operated from Frisco, Collin County, Texas.  In this role, Acacia is responsible for underwriting insurance risks, placing insurance policies, and managing claims that arise under those policies.  In so doing, Acacia relies on data management software that allows it to: (i) efficiently underwrite and place policies through its extensive networks of retail agents and  (ii) track/memorialize communications with its many policyholders and agents.

13.     Historically, Acacia licensed a right to use software commonly known as "Insuror Atlas" (previously defined as the "Atlas Software") from Defendant Maith's predecessor in interest, Tim Hunt ("Hunt").  The Atlas Software was developed by Hunt and three independent contractors (collectively, the "Developers").  On information and belief, the Atlas Software was not developed through a "work for hire" agreement and there was never any written agreement transferring ownership of the Developers' copyright to the Software to Hunt.  Thus, both Hunt and the Developers acquired ***non-exclusive*** rights to use the code underlying the Atlas Software.

14.     On or about May 31, 2024, Hunt sold (in relevant part) his rights to the Atlas Software to Maith.  In connection with the sale, Hunt also assigned his rights under a software license agreement with Acacia to Maith.  Because Hunt did not hold an exclusive right to the code underlying the Atlas Software, however, Maith received only concurrent rights to the Atlas Software.

15.     Realizing its mistake, Maith attempted to acquire exclusive rights to the Atlas Software as late as June 2024.  More specifically, Maith approached the Developers and demanded that they enter into "software consulting agreements" that would have (in relevant part) assigned

the Developers' rights in the Atlas Software to Maith.  However, the Developers refused to assign

their rights—leaving Maith once again with (at best) concurrent rights in the Atlas Software.

16.     In or around June 2024, the Developers founded Edgepoint.  There, they

developed/refined their own data management software (previously defined as the "Edgepoint

Software").  While the Atlas and Edgepoint Software share certain technical similarities, the

products are distinct in function, design, and application.  Even if the Edgepoint and Atlas Software

were identical, however, Maith holds (at best) a ***non-exclusive*** right to the code underlying the

Atlas Software—as discussed above.

17.     On or about June 27, 2024, Acacia terminated its software licensing contract with

Maith (as successor to Hunt), and it  entered into an agreement to use the Edgepoint Software.

18.     Shortly thereafter, Maith delivered a cease-and-desist letter (the "Demand Letter")

to Acacia claiming to be the "exclusive owner of all right, title and interest in and to [the Atlas

Software]" and demanding that Acacia "immediately cease and desist from any further use of the

[ Atlas Software], including but not limited to its reproduction, distribution, display, or sale."

Therein, Maith also requested written confirmation of Acacia's compliance with its demands, an

accounting of "all profits or benefits derived from the unauthorized use of the [Atlas Software]"

and "destruction of all copies of the [Atlas Software] with written confirmation within five (5)

business days."  In the Demand Letter, Maith threatened to "pursue all available legal remedies,

including but not limited to seeking injunctive relief, monetary damages, and reimbursement of

attorney fees and costs incurred as a result of enforcing its rights."  A true and correct copy of the

Demand Letter is attached hereto as Exhibit A and is incorporated by reference as if fully set forth

herein.

19.     As Plaintiffs' operations are both valid and non-infringing, Plaintiffs continue to utilize/assert rights in the Software.

## V.
## CAUSES OF ACTION
### COUNT 1 – DECLARATORY JUDGMENT
### (Maith's Rights in the Atlas Software—if Any—Are Non-Exclusive)

20.     Plaintiffs re-allege and incorporate the facts and allegations set forth in the above paragraphs as if set forth fully at length in this paragraph.

21.     An actual, substantial, and justiciable controversy exists between Plaintiffs and Maith regarding whether a claim exists for copyright infringement under § 501(a) of the Copyright Act (17 U.S.C. § 501(a), *et seq.*).  To resolve this controversy, Plaintiffs seek a judicial declaration under the Copyright and Declaratory Judgment Acts that Maith's rights to the code underlying the Atlas Software are non-exclusive—at best.  Indeed, on information and belief Maith: (i) does not own a copyright in the Atlas Software and (ii) Maith is not the owner of a claim to any copyright registered with the United States Library of Congress concerning the Atlas Software.

22.     A judicial declaration of limited—if any—rights is necessary and appropriate to resolve this controversy.  Plaintiffs request an order declaring that the alleged copyright(s) asserted by Maith regarding the Atlas Software are unenforceable because Maith owns (at best) a non-exclusive copyright to the code underlying the Software.

23.     Under 17 U.S.C. § 505, the prevailing party in a copyright case may be awarded its attorneys' fees.  Plaintiffs seek an award for their attorneys' fees, costs, and expenses incurred in connection with this action.

## COUNT 2 – DECLARATORY JUDGMENT
### (Non-Infringement of Maith's Copyright in the Atlas Software—if Any)

24.     Plaintiffs re-allege and incorporate the facts and allegations set forth in the above paragraphs as if set forth fully at length in this paragraph.

25.      As discussed above, Maith owns (at best) a non-exclusive copyright to the code underlying the Atlas Software.  Accordingly, Maith may not contend that Plaintiffs' use of the Edgepoint Software—and/or Edgepoint's assertion of rights in the Edgepoint Software—infringes on a valid copyright under § 501(a) of the Copyright Act, 17 U.S.C. § 501(a), or any substantially equivalent statute.   Thus, in conjunction with, and/or in the alternative to, the relief sought above, Plaintiffs seek a judicial declaration that the  Edgepoint Software has not (and does not) infringe on any rights Maith may hold in the code underlying the Atlas Software.

26.     An actual, substantial, and justiciable controversy exists between Plaintiffs and Maith regarding whether a claim exists for copyright infringement under § 501(a) of the Copyright Act, 17 U.S.C. § 501(a).  A judicial declaration of non-infringement is necessary and appropriate in order to resolve this controversy.  Plaintiffs are, therefore, entitled to declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing any valid copyright(s) owned by Maith relating to the code underlying the Atlas Software.

27.     Under 17 U.S.C. § 505, the prevailing party in a copyright case may be awarded its attorneys' fees.  Plaintiffs seek an award for their attorneys' fees, costs, and expenses incurred in connection with this action.

## VI.
## JURY DEMAND

28.     Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by jury.

---

## VII.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Acacia Insurance Managers, LLC and Edgepoint Systems, LLC respectfully request that the Court:

(i)      Declare Maith Solutions, LLC owns (at best) a non-exclusive copyright to the code underlying the Atlas Software;

(ii)      Declare that the Edgepoint Software does not infringe any valid copyright(s) owned by Maith concerning the code underlying the Atlas Software;

(iii)      Award Plaintiffs attorneys' fees, costs, and expenses incurred in connection with this action; and

(iv)      Award Plaintiffs such other and further relief as this Court deems just and proper.

Respectfully submitted,

**KESSLER COLLINS, P.C.**

*/s/ Gary S. Kessler*
GARY S. KESSLER
State Bar No. 11358200
gkessler@kesslercollins.com
STEPHEN J. HUSCHKA
State Bar No. 24097861
shuchka@kesslercollins.com
CHARMAINE VOORHEES BECKEN
State Bar No. 24087019
cbecken@kesslercollins.com

500 N. Akard St., Suite 3700
Dallas, Texas 75201
214-379-0722 Telephone
214-373-4714 Telecopier

**ATTORNEYS FOR PLAINTIFFS**
**ACACIA INSURANCE MANAGERS, LLC**
**AND EDGEPOINT SYSTEMS, LLC**