IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| ACACIA INSURANCE MANAGERS, LLC and EDGEPOINT SYSTEMS, LLC, | § | |
| Plaintiffs, | § | |
| v. | § | CIVIL ACTION NO. 4:24-cv-00620SDJ |
| MAITH SOLUTIONS, LLC | § | |
| Defendant. | § | |

**PLAINTIFFS' SECOND AMENDED COMPLAINT**

COME NOW Plaintiffs Acacia Insurance Managers, LLC ("Acacia") and Edgepoint Systems, LLC ("Edgepoint," and collectively with Acacia, "Plaintiffs") and file this Second Amended Complaint against Defendant Maith Solutions, LLC, ("Maith"). In support, Plaintiffs respectfully show:

## I. NATURE OF THE ACTION

1. Plaintiffs institute the instant action in an effort to protect themselves from Maith's meritless copyright infringement threats. As is relevant to the dispute, Acacia is a managing general agent responsible for underwriting insurance risks, placing insurance policies, and managing claims arising under those policies. In fulfilling these obligations, Acacia relies on data management software that allows it to: (i) efficiently underwrite and place policies through its extensive networks of retail agents and (ii) track/memorialize communications with its many policyholders and agents. Historically, Acacia licensed a right to use data management software commonly known as "Insuror Atlas" (the "Atlas Software") from Maith's predecessor in interest.

However, Acacia recently entered into an agreement to use data management software offered by Edgepoint (the "Edgepoint Software").

2. On or about July 1, 2024, Maith delivered a cease-and-desist letter demanding that Acacia refrain from using the Edgepoint Software because it (allegedly) infringes on Maith's "exclusive" rights in the Atlas Software. While the Atlas and Edgepoint Software share certain technical similarities, the products are distinct in function, design, and application. Even if the Edgepoint and Atlas Software were identical, however, Maith holds (at best) a ***non-exclusive*** right to the code underlying the Atlas Software.

3. Only compounding the problems caused by Maith's wrongful efforts to stymie legitimate business activities, it recently came to Plaintiffs' attention that Maith improperly: (i) retained and/or accessed a database containing confidential information of tens-of-thousands of insureds that Acacia services (i.e., policy information, usernames, passwords, etc.) and (ii) used this information to access the Edgepoint Software without Plaintiffs' effective consent.

4. Based on the foregoing, Plaintiffs were forced to institute this action seeking a judicial declaration that: (i) the alleged copyright ownership asserted by Maith as to the code underlying the Atlas Software is invalid and unenforceable and (ii) Plaintiffs' use of—or assertion of rights in—the Edgepoint Software does not infringe on any valid copyright rights allegedly owned by Maith. Further, based on Maith's improper conduct in the pendency of this action, Plaintiffs seek immediate and permanent injunctive relief to protect themselves from Maith's continued wrongful actions, as well as monetary damages.

## II.
## PARTIES

5. Acacia is a company organized and existing under the laws of the State of Texas with its principal place of business in Frisco, Texas.

6. Edgepoint is a company organized and existing under the laws of the State of Texas with its principal place of business in Frisco, Texas.

7. Maith is a company organized and existing under the laws of the State of Texas. Maith has appeared in this proceeding and may be served through its counsel.

## III.
## JURISDICTION AND VENUE

8. This is an action for declaratory judgment arising under: (i) the United States Copyright Act of 1976, 17 U.S.C. § 101 *et seq*. (the "Copyright Act") and (ii) 28 U.S.C. §§ 2201 and 2202 (the "Declaratory Judgment Act"). Thus, this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338. Such jurisdiction is exclusive of the "courts of the states" with regard to copyrights. 28 U.S.C. § 1338(a).

9. This Court has personal jurisdiction over Maith because Maith regularly maintains an office and registered agent in the state of Texas and, therefore, is continuously present in the State of Texas. Further, Maith has appeared in this action and is before the Court in all material respects.

10. Venue of this action is proper in the Eastern District of Texas under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to Plaintiffs' claim occurred and will continue to occur in the Eastern District of Texas (Collin County).

## IV.
## FACTUAL BACKGROUND

11. Acacia is a managing general agent ("MGA") based in Frisco, Texas. An MGA is a specialized type of insurance agent/broker that—unlike traditional agents/brokers—is vested with underwriting authority from an insurer. MGAs perform certain functions ordinarily handled only by insurers (i.e., binding coverage, underwriting and pricing, and resolving insurance claims). In this regard, an MGA's reputation for efficient and professional business practices—as well as the trust developed over time between insureds and the MGA servicing their policies/claims—is of paramount importance. Simply put, insureds expect MGAs to (in relevant part) service their policies/claims quickly and efficiently while keeping their confidential information private. Failure to do so would result in irreparable reputational harm to any MGA—including Acacia—that cannot be remedied through pure monetary recovery.

12. Like many MGAs, Acacia is responsible for underwriting insurance risks, placing insurance policies, and managing claims that arise under those policies. In so doing, Acacia relies on data management software that allows it to: (i) efficiently underwrite and place policies through its extensive networks of retail agents and (ii) track/memorialize communications with its many policyholders and agents. Historically, Acacia licensed a right to use software commonly known as "Insuror Atlas" (previously defined as the "Atlas Software") from Maith's predecessor in interest, Tim Hunt ("Hunt"). The Atlas Software was developed by Hunt and three independent contractors (collectively, the "Developers"). The Atlas Software was not developed through a "work made for hire" agreement and there was never any written agreement transferring ownership of the Developers' copyright rights in and to the Software to Hunt. Thus, both Hunt and the Developers acquired ***non-exclusive*** rights to use the code underlying the Atlas Software.

13. In connection with its use of the Atlas Software, Acacia provided Maith's predecessor in interest with an extensive database that housed confidential information concerning tens-of-thousands of insureds—including (but not limited to): (i) insurance policies placed (i.e., premiums, deductibles, terms, etc.), (ii) insured personal information (i.e., name, address, phone number, etc.), and (iii) claim information (i.e., communications regarding claims, property loss records/summaries, medical records/summaries, etc.) (collectively, the "Acacia Database"). Acacia provided Maith's predecessor in interest with a limited right to host/access the Acacia Database solely to facilitate Acacia's access/use of the information contained therein through the Atlas Software Further, the predecessor in interest was required in all instances to safeguard and maintain the confidentiality of the information contained in the Acacia Database.

14. On or about May 31, 2024, Hunt sold (in relevant part) his rights to the Atlas Software to Maith. In connection with the sale, Hunt also assigned his rights under a software license agreement with Acacia to Maith. Through its acquisition of the Atlas Software, Maith likewise received a limited right to the Acacia Database solely to facilitate Acacia's access/use of the information contained therein through the Atlas Software. Maith was also required in all instances to safeguard and maintain the confidentiality of the information contained in the Acacia Database.

15. Because Hunt did not hold an exclusive right to the code underlying the Atlas Software at the time of the sale, Maith received only concurrent rights to the Atlas Software. Realizing its mistake, Maith attempted to acquire exclusive rights to the Atlas Software as late as June 2024. More specifically, Maith approached the Developers and demanded that they enter into "software consulting agreements" that would have (in relevant part) assigned the Developers'

rights in the Atlas Software to Maith. However, all but one of the Developers refused to assign their rights—leaving Maith once again with (at best) concurrent rights in the Atlas Software.

16. In or around June 2024, all but one of the Developers founded Edgepoint. All but one of the Developers co-authored and developed data management software (previously defined as the "Edgepoint Software"). While the Atlas and Edgepoint Software share certain technical similarities, the products are distinct in function, design, and application. Even if the Edgepoint and Atlas Software were identical, however, Maith holds (at best) a ***non-exclusive*** right to the code underlying the Atlas Software—as discussed above.

17. On or about June 27, 2024, Acacia terminated its software licensing contract with Maith (as successor to Hunt), and it entered into an agreement to use the Edgepoint Software. Upon terminating its agreement with Maith, Acacia: (i) revoked Maith's limited right to host/access the Acacia Database and (ii) instructed Maith to destroy all copies of the Acacia Database within its custody. Further, the termination in no way alleviated Maith of its obligations to safeguard and maintain the confidentiality of the information contained in the Acacia Database.

18. On July 1, 2024, Maith delivered a cease-and-desist letter (the "Demand Letter") to Acacia claiming to be the "exclusive owner of all right, title and interest in and to [the Atlas Software]" and demanding that Acacia "immediately cease and desist from any further use of the [ Atlas Software], including but not limited to its reproduction, distribution, display, or sale." Therein, Maith also requested written confirmation of Acacia's compliance with its demands, an accounting of "all profits or benefits derived from the unauthorized use of the [Atlas Software]" and "destruction of all copies of the [Atlas Software] with written confirmation within five (5) business days." In the Demand Letter, Maith threatened to "pursue all available legal remedies, including but not limited to seeking injunctive relief, monetary damages, and reimbursement of

attorney fees and costs incurred as a result of enforcing its rights." A true and correct copy of the Demand Letter is attached hereto as Exhibit A and is incorporated by reference as if fully set forth herein.

19. On July 12, 2024, Maith filed its Answer and Original Counterclaims (the "Counterclaims"). Attached to the Counterclaims was Certificate of Registration No. TXu 2-436-022 (the "Putative Registration") for the Atlas Software. On information and belief, the Putative Registration reflects that inaccurate information was knowingly included on Maith's application for copyright registration that (if the inaccuracy was known) would have caused the Register of Copyrights to refuse registration.

20. For example, the Putative Registration indicates that the Atlas Software was authored by Hunt as a "work made for hire." On information and belief, however, Maith was aware at the time it submitted its application that the: (i) Developers co-authored the Atlas Software as a joint work, (ii) Developers were independent contractors, and (iii) Atlas Software was not the result of an express written instrument specially ordering or commissioning the work. Thus, Maith is not entitled to an exclusive registration, and its claim that the Atlas Software was authored as a "work made for hire" is demonstrably false.

21. As Plaintiffs' operations are both valid and non-infringing, Plaintiffs continue to utilize/assert rights in the Edgepoint Software.

## V. <br> CAUSES OF ACTION

### COUNT 1 – DECLARATORY JUDGMENT <br> (Maith's Rights in the Atlas Software—if Any—Are Non-Exclusive)

22. Plaintiffs re-allege and incorporate the facts and allegations set forth in the above paragraphs as if set forth fully at length in this paragraph.

23. An actual, substantial, and justiciable controversy exists between Plaintiffs and Maith regarding whether a claim exists for copyright infringement under § 501(a) of the Copyright Act (17 U.S.C. § 501(a), *et seq.*). To resolve this controversy, Plaintiffs seek a judicial declaration under the Copyright and Declaratory Judgment Acts that Maith's rights to the code underlying the Atlas Software are non-exclusive—at best. Indeed, on information and belief Maith: (i) does not own any exclusive copyright rights in the Atlas Software and (ii) the Putative Registration must be invalidated.

24. A judicial declaration of limited—if any—rights is necessary and appropriate to resolve this controversy. Plaintiffs request an order declaring that the alleged, exclusive ownership of the copyright rights asserted by Maith regarding the Atlas Software are unenforceable because Maith owns (at best) non-exclusive copyright rights to the Atlas Software.

25. Under 17 U.S.C. § 505, the prevailing party in a copyright case may be awarded its attorneys' fees. Plaintiffs seek an award for their attorneys' fees, costs, and expenses incurred in connection with this action.

**COUNT 2 – DECLARATORY JUDGMENT**

**(Non-Infringement of Maith's Copyright in the Atlas Software—if Any)**

26. Plaintiffs re-allege and incorporate the facts and allegations set forth in the above paragraphs as if set forth fully at length in this paragraph.

27. As discussed above, Maith owns (at best) non-exclusive copyright rights to the code underlying the Atlas Software. Accordingly, Maith may not contend that Plaintiffs' use of the Edgepoint Software—and/or Edgepoint's assertion of rights in the Edgepoint Software—infringes on a valid copyright under § 501(a) of the Copyright Act, 17 U.S.C. § 501(a), or any substantially equivalent statute. Thus, in conjunction with, and/or in the alternative to, the relief sought above, Plaintiffs seek a judicial declaration that the Edgepoint Software has not (and does

not) infringe on any copyright rights Maith may hold (if any) in the code underlying the Atlas Software.

28. An actual, substantial, and justiciable controversy exists between Plaintiffs and Maith regarding whether a claim exists for copyright infringement under § 501(a) of the Copyright Act, 17 U.S.C. § 501(a). A judicial declaration of non-infringement is necessary and appropriate in order to resolve this controversy. Plaintiffs are, therefore, entitled to declaratory judgment that they are not infringing, have not infringed, and are not liable for infringing upon any valid copyright(s) rights owned by Maith (if any) relating to the Atlas Software.

29. Under 17 U.S.C. § 505, the prevailing party in a copyright case may be awarded its attorneys' fees. Plaintiffs seek an award for their attorneys' fees, costs, and expenses incurred in connection with this action.

**COUNT 3 – Invalidation of Copyright Obtained Through Inaccurate Information Provided Knowingly (Invalidation of Copyright No. TXu 2-436-022)**

30. Plaintiffs re-allege and incorporate the facts and allegations set forth in the above paragraphs as if set forth fully at length in this paragraph.

31. An actual, substantial, and justiciable controversy exists between Plaintiffs and Maith regarding whether Maith holds valid copyright ownership to the work entitled "Insuror Atlas" that was registered with the U.S. Copyright Office under Registration No. TXu 2-436-022 (previously defined as the "Putative Registration").

32. The Putative Registration must be invalidated because Maith knowingly provided inaccurate information on its application for registration that, if the inaccuracy was known, would have caused the Register of Copyrights to refuse registration. For example, the Putative Registration indicates that that the Atlas Software was authored by Hunt as a "work made for hire." On information and belief, however, the: (i) Developers co-authored the Atlas Software as a joint

work, (ii) Developers were independent contractors, and (iii) Atlas Software was not the result of an express written instrument specially ordering or commissioning the work. Thus, Maith is not entitled to an exclusive registration, and its claim that the Atlas Software was authored as a "work made for hire" is demonstrably false.

33. Further, Maith was aware of the foregoing at the time it submitted its application. Indeed, Maith attempted to acquire ownership rights from the Developers as late as June 2024. More specifically, Maith approached the Developers and demanded that they enter into "software consulting agreements" that would have (in relevant part) assigned the Developers' copyright rights in the Atlas Software to Maith. However, the Developers refused to assign their rights to Maith. Even so, Maith filed its copyright registration application asserting exclusive rights to the Atlas Software as a "work made for hire" transferred from Hunt by written agreement.

34. Based on the foregoing, Plaintiffs request an order invalidating the Putative Copyright. Further, under 17 U.S.C. § 505, the prevailing party in a copyright case may be awarded its attorneys' fees. Thus, Plaintiffs seek an award for their attorneys' fees, costs, and expenses incurred in connection with this action.

## VI.
## JURY DEMAND

35. Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs previously demanded a trial by jury.

## VII.
## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs Acacia Insurance Managers, LLC and Edgepoint Systems, LLC respectfully request that the Court:

(i) Declare Maith Solutions, LLC owns (at best) non-exclusive copyright rights to the Atlas Software;

(ii) Declare that the Edgepoint Software does not infringe upon any valid copyright rights owned by Maith (if any) relating to the Atlas Software;

(iii) Award Plaintiffs attorneys' fees, costs, and expenses incurred in connection with this action;

(iv) Award pre- and post-judgment interests in the maximum amount permitted by law; and

(vii) Award Plaintiffs such other and further relief as this Court deems just and proper.

Respectfully submitted,

KESSLER COLLINS, P.C.

By: /s/*Gary S. Kessler*

GARY S. KESSLER
State Bar No. 11358200
gkessler@kesslercollins.com
SAMUEL C. KESSLER
State Bar No. 24118431
skessler@kesslercollins.com
EVAN W. WELTGE
State Bar No. 24110523
eweltge@kesslercollins.com
HANNAH L. HANSON
State Bar No. 24116483
hhanson@kesslercollins.com

500 N. Akard St., Suite 3700
Dallas, Texas 75201
214-379-0722 Telephone
214-373-4714 Telecopier

**ATTORNEYS FOR PLAINTIFFS/COUNTER-DEFENDANTS ACACIA INSURANCE MANAGERS, LLC AND EDGEPOINT SYSTEMS, LLC**

## CERTIFICATE OF SERVICE

I certify that a true copy of the foregoing has been served by electronic service through the Federal Court ECF system, by email in accordance with the Federal Rules of Civil Procedure on this 25th day of November, 2025, upon all attorneys of record.

/s/*Gary S. Kessler*
GARY S. KESSLER