# EXHIBIT K

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| ACACIA INSURANCE MANAGERS, LLC and EDGEPOINT SYSTEMS, LLC, | § | |
| | § | |
| Plaintiffs/Counter-Defendants, | § | |
| | § | |
| v. | § | Civil Action No: 4:24-cv-00620SDJ |
| | § | |
| MAITH SOLUTIONS LLC, | § | |
| | § | |
| Defendant/Counter-Plaintiff/Third-Party Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| BRIAN BORDERS and IVAN BETANCOURT | § | |
| | § | |
| Third-Party Defendants. | § | |

**DECLARATION OF JOHN EDWARDS IN SUPPORT OF
MAITH SOLUTIONS LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

I, John Edwards, declare the following:

1. My name is John Edwards.

2. I have personal knowledge of the matters set forth herein and if called to testify, I could and would testify competently to them.

3. I submit this declaration in support of Maith's Motion for Partial Summary Judgment filed contemporaneously herewith.

4. I am presently an employee of Seaharbor Insurance Agency and work for Maith Solutions.

5. Prior to employment with Seaharbor, I worked for Tim Hunt ("Hunt") for over 30

years.

6. By 2007, Tim Hunt was marketing his data management and insurance software to other insurance companies as "Insuror Atlas" ("Hunt's Insuror Atlas Business"). Hunt licensed his data management and insurance software to other insurance companies since at least 2007.

7. The Insuror Atlas Software operated on servers owned by Tim Hunt. The servers were located in office space owned by Hunt or leased by and paid for by Hunt. These servers were acquired by Maith.

8. Brian Borders ("Borders") and Ivan Betancourt ("Betancourt") also worked for Hunt and worked for his Insuror Atlas business.

9. Borders, Betancourt and myself all, worked on various projects for Hunt's Insuror Atlas business. We used virtual machines (*i.e.*, a virtual computer), which is software that allows us to remotely control programs and information on Tim's servers, to operate the Insuror Atlas business. For example, we serviced Hunt's clients, maintained and updated the Insuror Atlas Software code using a virtual machine. I also ran payroll and ran billing for Hunt's business through a virtual machine.

10. None of us were hired by Hunt for any specific task or project. Hunt asked us to work on various projects for his Insuror Atlas business and we did.

11. Borders and I were software developers that updated the Insuror Atlas Software from Dataflex to Visual Dataflex and from Visual Dataflex to Visual Basic. Hunt supervised our work on the updates and had ultimate decision-making authority over the Insuror Atlas Software's operation and decided when it went live. Updating the code was part of our employment for Hunt and we did not get paid extra for updating the software, nor did we get paid upon completion of the updates. We received our regular salary during that time.

12. One of my responsibilities was to run payroll for Hunt's Insuror Atlas business. Borders, Betancourt and I all worked for Hunt until May 31, 2024, the date that he sold the business to Maith.

13. Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct. Executed on April 18, 2025.

John Edwards